### The PRUDENTIAL INSURANCE COMPANY OF AMERICA

v.

### William Edward MOORHEAD, Alice Ethyl Shnieble Moorhead, the Minor, Billie–Jo Piedra, Jessyca Lee Wood, Minor Child.

#### Civ. A. No. 86–408–A.

United States District Court, M.D. Louisiana.

Dec. 8, 1989.

See also 730 F.Supp. 731.

David R. Kelly, Breazeale, Sachse & Wilson, Baton Rouge, La., for plaintiffs.

Tara A. Hingle, Asst. U.S. Atty., M.D.La, Baton Rouge, La., and Kevin Simpson, U.S. Dept. of Justice, Washington, D.C., for intervenor.

David W. Robinson, Baton Rouge, La., for defendants William Moorhead and Alice Moorhead.

David E. Stanely, Baton Rouge, La., for The minor, Billie–Jo Piedra.

William N. Faller, Baton Rouge, La., Jessyca Lee Wood, Minor Child.

## RULING ON MOTION

JOHN V. PARKER, Chief Judge.

This matter is before the court on the motion of defendant, Billie–Jo Piedra, challenging the constitutionality of 38 U.S.C. §§ 765(8) and 770. The motion is opposed by defendants, William Edward Moorhead and Alice Schnieble Moorhead, and a memorandum in support of the constitutionality of the statute has been filed by the United States. Oral argument was held and all interested parties have briefed the issues. Jurisdiction is allegedly based upon diversity of citizenship but it is obvious that the court also has jurisdiction under 28 U.S.C. § 1331, since the distribution of the fund is dependent upon federal statute.

This interpleader action was filed by The Prudential Insurance Company of America to distribute the proceeds of a policy of Servicemen's Group Life Insurance, which was issued pursuant to the provisions of 38 U.S.C. § 765, et seq. It is alleged that on July 26, 1985, Joanne Piedra who is the mother of Billie–Jo Piedra, told William E. Moorhead, Jr. that she was pregnant with his child. On August 26, 1985, William E. Moorhead, Jr. died in New York in a motorcycle accident. When William E. Moorhead, Jr. died, he was on active duty in the United States Navy, and The Prudential Insurance Company of America had in effect a Servicemen's Group Life Insurance Policy in the amount of $35,000, which insured the life of William E. Moorhead, Jr. while he was on active duty. At the date of Moorhead's death, he had not designated a beneficiary under the life insurance policy. The proceeds of the policy are therefore to be distributed according to the terms of 38 U.S.C. § 770. Approximately seven months after William E. Moorhead, Jr.'s death, Billie–Jo Piedra was born on March 14, 1986. Moorhead died leaving no surviving spouse.

Plaintiff has amended its complaint to include as a defendant a second alleged unacknowledged illegitimate child, that of William E. Moorhead, Jr. and Jan Wood, Jessyca Lee Wood.

By way of this motion, mover states that on February 2, 1987, a judge of the Family Court for the County of Duchess, State of New York, signed a judgment, which has now become final, declaring that William E. Moorhead, Jr is the father of Billie–Jo Piedra. On April 21, 1987, the New York State Department of Health issued a Birth Certificate showing William E. Moorhead, Jr. as the father of Billie–Jo Piedra.

Mover concedes that the requirements of 38 U.S.C. § 765(8), which allow illegitimate children to recover life insurance proceeds under Servicemen's Group Life Insurance policies have not been met. Mover does allege, however, that 38 U.S.C. §§ 765(8) and 770 violate the equal protection element of the Due Process Clause of the Fifth Amendment to the Constitution by treating illegitimate posthumous children of insured service men differently than similarly situated legitimate children. Mover contends that the sections at issue: (1) discriminate against posthumous children based on illegitimacy without an evident and substantial relationship between the classification and the governmental interest the statute seeks to protect; (2) deprive mover of a property interest without time to prove paternity and to have a hearing; (3) restrict the manner in which one is allowed to prove paternity, and put time limits on establishing paternity that are not substantially related to a governmental interest which the sections seek to protect.

Mover essentially asserts two challenges to the constitutionality of the sections: first, that the classification is based on illegitimacy and is not substantially related to any important governmental interest, and thus denies mover of the equal protection of the laws guaranteed by the Due Process Clause of the Fifth Amendment; and second, that the classification deprives mover of property rights without due process, in violation of the Due Process Clause of the Fifth Amendment.

Equal Protection

Because of the vagaries of the lives of members of the armed forces, life insurance is not available to them at rates comparable to those available to civilians. Accordingly, the Congress has deemed it in the national interest to participate in the funding or underwriting of such insurance. See 38 U.S.C. § 769(b). The Congress has also prescribed the order of beneficiaries. Under 38 U.S.C. § 770(a), if no beneficiary has been designated by the insured, the surviving spouse takes the proceeds of the insurance policy. If there is no surviving spouse, the child or children take the proceeds of the policy, and if there are no children, the parents of the insured take the proceeds of the policy. Under 38 U.S.C. § 765(8), "child" is defined as a legitimate child, an illegitimate child as to the mother, or an illegitimate child as to the alleged father if the child is acknowledged in a writing signed by the father; or if the father has been judicially ordered to contribute to the child's support; or the alleged father has been judicially decreed prior to his death to be the father; or a birth certificate or church record shows that the insured was named as the father of the child with his knowledge; or public records show that with his knowledge, the insured was named as the father of the child.

The parties agree that no beneficiary was designated prior to the death of William E. Moorhead, Jr., and that none of the statutory requirements for proving filiation as to a father have been met. Mover contends that the methods of qualifying to obtain the proceeds of the insurance policy are unconstitutional.

In *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988), the court held that an intermediate level of scrutiny is to be applied to classifications based on illegitimacy. Therefore, in order for a classification based on illegitimacy to violate the equal protection component of the Due Process Clause of the Fifth Amendment, the classification "must be substantially related to an important governmental objective." *Id.*

The United States argues that the classifications in § 765(8) are substantially related to an important governmental objective. The United States and the mover both refer to the legislative history surrounding the passage of these particular sections. That history indicates that the purpose of including a definition of "child" in the statute was to provide uniformity so that similarly situated illegitimate children would not be required to meet different conditions from state to state in order to be eligible for proceeds. See 1971 U.S.Code Cong. & Admin.News 2127. The United States further asserts that since a portion of the money in

the Servicemen's Group Life Insurance program comes from federal funds, the United States has an interest in the orderly and efficient distribution of the insurance proceeds. The United States also alleges that the definition of "child" adopted by the Congress ensures accuracy and reliability in paternity determinations, decreases the chance of success of spurious and fraudulent claims, and ensures the orderly and efficient distribution of property at death.

■ Plaintiff argues that only the rationale contained in the legislative history should be considered in defining the interest of the government. However, as the United States points out, it is not necessary that the Congress explain the reasoning behind every legislative decision. The court is permitted to search for the requisite governmental interest. *U.S.R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

The parties have cited several Supreme Court decisions dealing with classifications based on illegitimacy, and they have endeavored to distinguish each of these cases from the present situation. Chronologically, these cases are briefly summarized below.

In *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), the Supreme Court found that illegitimates could not be excluded from the class of persons authorized to file wrongful death actions, when the illegitimate was dependent on the decedent.

In *Weber v. Aetna Casualty & Surety Company,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), the court found that dependent, unacknowledged illegitimates could not be denied workmen's compensation death benefits, because the inferior classification of these dependent children bore no significant relationship to the recognized purposes of support that workmen's compensation statutes are designed to serve. In *Weber,* there was no way for the children to be legitimated.

In *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the court found that illegitimates could not be excluded from the support obligation of their parents where the parent had a duty to support the child.

In *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), the court found that dependent, nonlegitimated illegitimate children born after the onset of the parent's disability could not be denied Social Security benefits, which are aimed at aiding dependent children.

Under *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), discrimination against some illegitimates with respect to Social Security benefits is acceptable when justified as a reasonable effort to serve administrative convenience. In *Mathews,* the classifications were reasonably related to the likelihood of dependency of the child on the decedent at the time of death.

In *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), the court approved a state estate distribution scheme which required that an illegitimate child obtain an order of filiation prior to death in order to share in an interstate succession. In *Lalli,* the classification was found to be substantially related to the important state interests of the orderly disposition of property and of making accurate determinations of paternity.

■ In the case at bar, the articulated Congressional policy behind § 765(8) is to provide uniformity in the disposition of the insurance proceeds from the Servicemen's Group Life Insurance policy. (See 1971 U.S.Code Cong. & Admin.News 2127.) As mentioned above, the classifications also serve to lend accuracy to the proof of paternity, to deter spurious claims and to facilitate efficient distribution of the proceeds of life insurance on the lives of members of the armed forces.

Under the distribution order provided by § 770, if no beneficiary has been named, the surviving spouse is the first to receive the proceeds, to the exclusion of children. Therefore, the insurance policy does not appear to be aimed at providing support for dependent children. Thus, the dependency considerations discussed in the Supreme Court cases are not applicable to the case

now before this court. The present case is most analogous to *Lalli v. Lalli,* where the illegitimate child had to be formally acknowledged during the father's lifetime in order to inherit, and that requirement was found to be substantially related to the same types of governmental interests as exist in the case at bar: the orderly and efficient disposition of property (part of which is federal funds) and the making of accurate determinations of paternity. Further, under *Mathews,* the classifications in § 765(8) are reasonably related to the orderly disposition of the insurance proceeds.

The classifications in § 765(8) are substantially related to important governmental objectives, such that there is no violation of the equal protection element of the Due Process Clause of the Fifth Amendment.

Mover also asserts that the methods of proving paternity are limited in time by § 765(8). The mover refers to several statute of limitations cases to show that any requirement that paternity be established prior to death of the alleged father is unconstitutional. In those cases, the court found that an arbitrary length of time established within which to prove paternity was not substantially related to any important governmental objective, so as to allow a classification based on illegitimacy. See *Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). In the present case, however, no such arbitrary time limit was provided. Filiation simply must be established prior to the death of the alleged father, a scheme similar to that which was approved in *Lalli* for distribution of interstate estates.

Due Process

■ Mover also asserts that the illegitimate child was denied a right to the insurance proceeds without a hearing to prove that Mr. Moorhead was her father, since the methods of proving paternity are limited by § 765(8). Mover asserts that the child has a property right in the insurance proceeds that is denied without due process. Assuming that such a property right in the proceeds does exist, the method in § 765(8) for determining which children can receive the insurance benefits in the absence of a designated beneficiary are substantially related to an important governmental interest, such that the statute provides due process. Mr. Moorhead could have acknowledged that the child was his prior to his demise. Further, if, as the parties assert, Mr. Moorhead is presumed to know what would happen to the life insurance proceeds if he failed to designate a beneficiary, it would be presumed that he would know that any illegitimate children would not receive the proceeds unless one of the requirements of § 765(8) was met.

There is no due process violation, since the decedent could have cured the illegitimacy in the eyes of the statute. The governmental interests of uniformity, accurate proof of paternity, disposition of property and suppression of fraudulent claims are furthered by the provisions of § 765(8).

Accordingly, the defendant's motion challenging the constitutionality of 38 U.S.C. §§ 765(8) and 770 is hereby DENIED.

This ruling disposes of the only significant legal issues in the case and the court assumes that the matter can now be resolved in its entirety by summary judgment.